of the day is United States of America v. Under Seal, Ms. Ruhle. Good morning, Your Honors. I'm Caroline Ruhle, and I represent the witnesses in this matter. Good to have you here. Your Honors, when Shapiro enunciated the required records doctrine in 1948, the Fifth Amendment privilege against self-incrimination was interpreted to protect the contents of a document. If the contents were public in nature as opposed to private, there was no personal Fifth Amendment right. Decades later, in Fisher v. Doe, however, the Supreme Court established the act of production doctrine, which undercuts the Shapiro required records doctrine, since the court held the Fifth Amendment no longer protects the contents of a document, whether public or private. The privilege now attaches only to the forced testimonial act of producing a document or record. And as stated in 1986 by now Justice Alito, the act of producing records may amount to testimonial self-incrimination, and this is no less true for acquired records than for records of any other type. The government argues incorrectly that this case is similar to this court's prior decisions applying the required records doctrine, relying heavily on United States v. Walden, which was in any event decided pre-Fisher, pre-full recognition of the act of production doctrine. And it cited for the proposition that the required records doctrine applies to regulatory schemes governing potential criminal liability. But Walden held that disclosure there did not represent a, quote, real and appreciable hazard of, quote, providing a link in the chain of evidence against the disclosing party. The court was significantly influenced by its understanding that, quote, no substantial danger of prosecution would result from compliance with the IRS statutes at issue in that case. Here, however, for the witnesses to produce documents required by 31 CFR 1010420 will almost surely guarantee their prosecution. This court's decision in United States v. Webb, also pre-Fisher, likewise carefully noted that when an individual voluntarily produced incriminating documents, no criminal action was then anticipated. Here, of course, the government concedes that the witnesses are targets of a grand jury investigation. So criminal action is definitely anticipated. The government's rationale simply don't support application of the required records doctrine here. There has been no waiver of the Fifth Amendment. A view of the required records doctrine is permitting an entirely unknowing waiver of a privilege that the Supreme Court in In re Gold has characterized as unequivocal, completely undermines a constitutional privilege and cannot stand. There's no evidence that foreign bank account holders were publicly and specifically informed that they were required to file FBARs. In fact, there's no evidence in the record that these witnesses were even subject to any record keeping or reporting requirements when they allegedly acquired a foreign bank account. Assuming that there is such account, the witnesses could have been non-resident aliens when the account was opened or they could have acquired the account by inheritance or as a gift from a non-resident alien. The government's heavy reliance on United States v. Dickney, I think that's how you pronounce it, is absolutely misplaced. The witnesses do not distinguish Dickney because it involved Bank Secrecy Act reporting requirements as opposed to record keeping requirements as the government asserts. Rather, Dickney is irrelevant because the issue there was whether a regulatory requirement that an individual report transportation of monastery instruments across the border by itself violated the Fifth Amendment. Dickney did not involve a grand jury subpoena. Dickney never cites Shapiro. It never mentions the act of production. It never mentions required records or whether the statute is essentially regulatory. It does not apply the three-prong test of Grosso. The defendant in Dickney did not assert the Fifth Amendment privilege until after he had been caught and prosecuted at which point he attacked the constitutionality of the reporting provision itself. But the witnesses here have not attacked the constitutionality of the foreign account reporting or record keeping requirements. Similarly, the defendant in United States v. Sturman attacked the constitutionality of the Bank Secrecy Act reporting requirements after he was prosecuted. He never asserted the act of production privilege. Dickney would be analogous to this case only if the Dickney defendant had been required by a statute to maintain records of currency transactions and to report them annually, was then suspected of violating these requirements, and was issued with a grand jury subpoena calling for records of his reportable currency transactions, any response to which would necessarily be incriminating, thus giving rise to the act of production privilege. Those aren't the facts of Dickney. The Dickney defendant never asserted his Fifth Amendment act of production privilege. So Dickney's holding that the Bank Secrecy Act's currency reporting requirements are constitutional is of no precedential value here. Likewise, the cases relied on by the government for the proposition that record keeping and inspection requirements are only unconstitutional if they are directed at those inherently suspect of criminal activities, i.e., the Haynes, Byers, and Leary cases, never mention the act of production privilege. They were decided before Fisher and Doe. And in Baltimore v. Bucknight, which is decided after Fisher and Doe, the court specifically said it didn't need to reach the question of what limitations would be required on the government's use of testimonial aspects of the Mother's Act of producing a child. But the court certainly recognized that these limitations would apply in any criminal prosecution. So the court in Bucknight recognized the act of production privilege. What is relevant in Dickney, however, was that it decided whether the defendant there had sufficient notice of the currency reporting requirements when he tried to leave the country with a large sum in reportable negotiable instruments. The court held that posters displayed around an airport departure area and four announcements over the loudspeaker system were sufficient notice of the defendant's obligation to file a form. In Johnson v. Zerbst, the Supreme Court stated that courts indulge every reasonable presumption against waiver of fundamental constitutional rights. The Ninth Circuit in Inouye, MH, which is the progenitor of the three other circuit cases holding that the required records doctrine applies to a subpoena like the one here. There's four circuits that have dealt with this specific issue. Yes, Your Honor. You acknowledge that they're on point. Yes, Your Honor. I just, my argument is they are simply wrong. You think they're wrong and that we should go the other way. Yes. So if we do go, if we go your way, we will create a circuit split. Yes, Your Honor. There's no one, there's no circuit out there that's agreed with you. No, but four circuits have been wrong before and the Supreme Court has. They've all been wrong, but those four circuits are the 9th and what other three? The 9th, the 11th, the 7th, and the 5th, 6th, one of those two. I'm sorry, it's just gone out of my head. And one more. That's four. 9th, 11th, 7th, and one more. And one more, yes. That's close enough. But they all essentially rely on the 9th Circuit's decision in In Re M.H. and follow its reasoning. So In Re M.H. cited Shapiro for the proposition that the privilege is overcome when, quote, the custodian of records has voluntarily assumed a duty. Voluntarily assuming a duty, however, requires that you know of the duty. Before the In Re M.H. decision, cases that applied the required records doctrine involved individuals who entered a regulated activity knowing that maintenance of and reporting of records was a condition of doing so. There's no evidence here that the witnesses knew that record keeping or reporting of a foreign bank account was required. The government and In Re M.H. and its progeny all rely on California Bankers Association versus Schultz, the Supreme Court case, for the proposition that the Bank Secrecy Act has been held constitutional. But the witnesses are not attacking the constitutionality of the Bank Secrecy Act regulations concerning foreign bank accounts. Nevertheless, California's Bankers Association said specifically that it was not going to address the question of what relief the petitioners in that case could get in a judicial proceeding because that was premature. So the Supreme Court never reached the issue that is in this case. The Supreme Court did not address the required records doctrine nor the act of production privilege in California Bankers Association. There's a clear distinction between the question whether a statute or regulation is constitutional and the question whether an individual has a Fifth Amendment right to be protected from the forced testimonial production of a document. Indeed, way back in Marchetti, the Supreme Court made that distinction clear. Holding petitioner properly asserted the privilege against self-incrimination. We emphasize that we do not hold that these wagering tax provisions are as such constitutionally impermissible. We only hold that those who properly assert the constitutional privilege as to those provisions may not be criminally punished for the failure to comply with their requirements. While we rely on our briefs as to why the three-pronged Grosso test for whether the required records doctrine applies is not met in this case, we stress that the first prong, that the law be essentially regulatory, is not met by the Bank Secrecy Act's foreign bank account record-keeping and reporting provisions. Marchetti described this first Grosso prong as requiring that a statute or regulation relate to an essentially non-criminal and regulatory area of inquiry. While the Bank Secrecy Act overall may contain regulatory provisions, under no reasonable characterization can its foreign bank account reporting provisions be termed non-criminal. As announced by FinCEN, the Federal Financial Crime Enforcement Network, which is charged with enforcing these very provisions, the foreign account-related regulations seek records, quote, in support of law enforcement and intelligent efforts to deter, identify, and investigate crime. As our briefs demonstrate, legislative history supports that the Bank Secrecy Act's foreign bank account reporting provisions are not essentially non-criminal. And the government is incorrect in claiming that legislative history is irrelevant. We cited cases in our briefs where courts have looked to legislative history in the required records area. Indeed, in Grosso, the court relied on Congress's apparent wish that information obtained as a consequence of the wagering taxes be made available to prosecuting authorities looking at legislative history. Finally, I wish to add a few words about the third Grosso prong, i.e., that the documents in question be public in nature. Shockingly, the government's proposition is that if Congress can regulate or forbid a subject, then Congress can require recordkeeping. And if Congress requires recordkeeping, records are automatically public. If the government is correct, then Congress by statute or any agency by regulation can negate the Fifth Amendment privilege simply by requiring recordkeeping. Under that position, Congress or any agency can override the Constitution. For example, Section 6001 of the Internal Revenue Code and the regulations thereunder require that all records necessary to determine what taxes must be kept. Under the government's theory, all these records are public. While the prosecution has tried to distance itself from this proposition, the Assistant Attorney General for the Department of Justice, Tax Division, has stated after re-in re-MH and its progeny that the government's argument regarding foreign account records are not so broad that they affect other areas of record retention. But she admitted that it's only because we're not making those arguments right now. This affirmation that the required records doctrine could in the future be made applicable to all records relating to income demonstrates how prescient Justice Frankfurter was when in dissent in Shapiro. He warned, if records merely because required to be kept by law ipso facto become public records, we are indeed living in glass houses. Virtually every major public law enactment has record-keeping provisions. If this court holds, along with the other courts, that records pertaining to one's personal foreign bank accounts are not protected from forced production, forced testimonial production over a timely claim of active production privilege against self-incrimination, then essentially no document is safe from forced production by the government. Such a holding would foretell the end of the Fifth Amendment as applied to the written word. Thank you. Thank you very much, Ms. Ruhl. I had reserved three minutes for rebuttal.  Ms. Hart-Mahan. May it please the court, Alyssa Hart-Mahan for the United States. The required records doctrine provides that Congress may make the retention of records a condition of participation in an activity that Congress can constitutionally regulate or forbid. That was the essential holding in Shapiro, which was the first case in which the court recognized the required records. And it made clear that, again, when Congress has chosen to require records as a condition of participating in such an activity, the Fifth Amendment does not apply and that participants in that regulated activity have agreed to maintain those records as a condition of participating in the activity. In Grosso, Marchetti, and Haynes, which are the cases that were decided all year, the court made clear the limits to Shapiro and established that the government cannot establish a system requiring criminals to self-report and that if a regulatory regime requiring records was directed at activity that was inherently criminal, it was almost certain to be criminal, that that did not abrogate the Fifth Amendment, that the Fifth Amendment applied. However, the test laid out in Grosso and Marchetti required the government to show that the regulations at issue had to be essentially regulatory, could not be directed at criminals. The Bank Secrecy Act, which is the statutory scheme at issue here, satisfies both of those requirements. It's undisputed that under the Foreign Commerce Clause, Congress has the power to regulate or forbid offshore bank accounts, commerce with foreign nations. When it enacted the Bank Secrecy Act, Congress established as a condition for having an offshore bank account, the maintenance of records, including the name of the bank, the account number, and the maximum balance during calendar year, and to file a report of that bank account with the Department of Treasury. That's the FBAR. So it doesn't have to be detailed beyond the maximum balance during the year. Correct. Is that it? Right. I mean, it needs to include the name of the bank and I believe the account number as well. Name of the bank, account number, and the maximum balance. Yes. So if it had a million dollars in it one day, it had to show a million dollars. Right. To report with it. Right. So the Bank Secrecy Act requires those records and also establishes the FBAR reporting requirement. It has to be reported on an annual basis? Yes, Your Honor. The same information that's required to be maintained in the records is also required to be reported on the FBAR form annually. There is no dispute that there is nothing criminal about having an offshore bank account, and the Bank Secrecy Act did not criminalize having an offshore bank account. Again, as is clear from the briefs here, hundreds of thousands of individuals have foreign bank accounts, file the required annual reporting requirement, but file the FBAR form. So there's nothing criminal, and again, all of the… The problem comes when they don't report properly on the tax return, as far as you all are concerned. Yes, when they don't report it on the tax return or if they fail to file the FBAR. I would note, however, that in order to be held criminally liable for a failure to file the FBAR, the government would have to prove that the account holder acted willfully, that the account holder was aware of the regulations. Willful failure to file. Willful failure to file, willfully filing a false return, willful failure to file the FBAR, and again, the criminal provision regarding the failure to maintain the records required by the statute. In order to be held criminally liable for failure to maintain the required records, there's also a willfulness element. Procedurally, this thing, you all issued grand jury subpoenas to a couple witnesses, husband and wife in Alexandria. The Eastern District of Virginia, yes, Your Honor. The Grand Jury of Alexandria, the Eastern District of Virginia, and then their lawyer probably wrote a letter to you and said, my clients will take the Fifth Amendment if we don't want to show up. They moved to quash the subpoena. They moved to quash. Yes. Did they notify you before they moved to quash? I don't know the answer to that, Your Honor. Okay. I can find out if that's significant. No, I'm just trying to figure it out. But at some point they moved to quash. They moved to quash. And it was denied. Right, the issue was litigated before the district court. Right, and the district court ruled in favor of the government. Yes. But then there was a agreed upon contempt citation. Yes, the parties entered into a stipulation. Stipulation of contempt. Civil contempt, yes. Civil contempt for not complying with the Grand Jury subpoena and the court ruling, or both. I'm sorry? Not complying with the Grand Jury subpoena and the court ruling, or both. Right, for failure to comply with the subpoena. Not the court ruling, just the subpoena. I mean, the court ruling required them to comply with the subpoena. So if they didn't comply with the subpoena, they were defiant to the court. Exactly. It's the same. I would submit it's the same. But there was an agreed contempt order issued. Yes. And then a notice of appeal. Yes. And that's how it got here. Yes. And that posture is similar to the posture in all of the recent cases dealing with this issue, the four cases. And just to clarify, the four courts that have ruled are the Ninth Circuit, the Seventh Circuit, the Fifth Circuit, and the Eleventh Circuit. Fifth Circuit. In addition, the Sixth Circuit in a case from the 1980s, upheld the FBAR requirement against a Fifth Amendment challenge. And the Second Circuit in Dickney upheld a different provision of the Bank Secrecy Act involving the duty to report transporting more than $5,000 outside of the country. But upheld that provision of the BSA against the $5,000 in monetary instruments. So I believe in Dickney there was cash. The defendants had more than $5,000. It didn't have to be cash. Yes, you'd need to check the definitions of monetary instruments. If their response was to the subpoena, the grand jury subpoena, I don't believe I was required to have any records that you're asking for. That was their response verbatim. So I don't believe I was required or am required to have the documents you requested, period. In this case or in Dickney, Your Honor? In this case. In this case? No, Your Honor, their response was on Fifth Amendment grounds, was if I respond to this subpoena, I will incriminate myself, and I have a Fifth Amendment right not to incriminate myself. But it would be responsive. I'm saying this is hypothetical. Oh, I'm sorry. I thought you said in this case they have said. It's hypothetical for this case, though. Excuse me. I'm sorry. I misunderstood the question. Hypothetical. Hypothetical. Would that be fine in there? You couldn't go any further, could you? If they represented that they were not subject to the regulations and did not. I don't believe that I was required to keep the records that you are requesting. That was their answer. I mean, that's responsive to the question of whether there was willfulness, whether they knew of the regulation. I don't believe it's responsive to the question of whether they have the documents in their possession. So you're forcing them to say yes or no to that? Yes. And that's consistent with Shapiro, with the Grosso Marchetti cases from the Supreme Court, the Supreme Court's subsequent cases, Byers and Bootnight, both of which apply the required records doctrine in different arenas. Byers involved drivers of cars who are required to provide their name and contact information after being involved in an accident. Bootnight involved production of a child to the Baltimore Department of Social Services when there was a concern about the child's welfare. In both of those cases, the Supreme Court recognized that producing the information, the name and contact information in Byers, or the child in Bootnight, had incriminating aspects, and that that information could be useful to the government in a criminal investigation. However, the Supreme Court in both of those cases applied the required records doctrine, held that there was no Fifth Amendment privilege in those cases because there was a general regulatory regime that applied to drivers of automobiles and custodians of children under court supervision, that that was not inherently criminal activity, and accordingly the required records doctrine applied. This court also applied that same philosophy in United States v. Webb, which involved regulation of interstate trucking, and United States v. Walden, which involved taxing provisions of a distillery. In Walden, I would point out that the defendants in that case were operating a distillery in violation of state law, and that state law prohibited operating a distillery in the state. It wasn't much of a distillery. It was a still up on the mountain, wasn't it? Excuse me, Your Honor? It was a moonshine still, the West Virginia question. Yeah, there was a reference. I think there was a reference to white whiskey in the opinion, so you may be correct, Your Honor. But, again, even though there's no dispute that they were operating this distillery in violation of state law, the court held that disclosing that fact to the IRS could incriminate them, and this court held that because it was a generally applicable regime and that distilling liquor was legal in most states, that Grosso and Marchetti did not apply, that Shapiro applied, and that the defendants couldn't refuse to produce that information on Fifth Amendment grounds. I want to make a couple of other points. Involving the test under the Fifth Amendment regarding waiver is not a knowing and intelligent waiver of a Fifth Amendment right not to incriminate oneself. The test is general voluntariness. And so in this instance, as long as the defendants have voluntarily entered into the regulated activity, that is, voluntarily maintained a foreign bank account, then they are subject to the conditions requiring them to maintain records and report their foreign bank accounts. And this court's decision in United States v. Webb discusses that issue at some length. Again, Webb was arguing that his disclosure of the records was not protected, or, excuse me, he had not waived his Fifth Amendment right because he was not informed of his right not to incriminate himself before he provided the records. And this court in Webb indicated, no, the question is voluntariness. Apply the required records doctrine. The Supreme Court case of Minnesota v. Murphy, which we cite in our brief, makes clear that the knowing and intelligent waiver standard only applies in the arena of custodial interrogations, that Miranda is sort of a special case. The witness's argument that the statutory scheme at issue here is primarily concerned with criminal law enforcement is not consistent with the text of the statute or with the Supreme Court's opinion in California Bankers Association v. Schultz, which held that concerns about civil liability motivated Congress at least as much as criminal liability. And again, the purposes listed in the text of the statute are that Secretary of the Treasury shall promulgate regulations to collect information particularly useful in criminal, tax, and regulatory matters. And so while there is a criminal component to this, it's clear that there are also civil tax and regulatory concerns at issue in the statute. Finally, I want to correct a factual misrepresentation in the witness's reply brief, which suggests that tax returns did not mention the FBAR reporting requirement until 2012. And that's not accurate. Since the 1980s, Schedule B of the Form 1040 includes a question about whether the taxpayer has a foreign bank account and specifically references Form TDF 90, dash 22.1, which is the FBAR form cross-references the instructions for Schedule B of the 1040, which makes clear the scope of the reporting requirement. The court has no further questions. We ask that you affirm the district court's ruling in this case. Thank you. Thank you very much. Ms. Hart, my hand. Ms. Rule. Thank you. In our reply brief, we didn't say that the tax returns didn't mention FBARs. They did mention an FBAR, but they referred to a 90-page instruction. One page. You had to search for one page in 90 pages of instructions to find where that instruction was. It was only in 2012, tax returns due in 2012, that the Schedule B specifically says what an FBAR is and who has to file it in the instructions to that schedule. So that's the difference. That's the difference. That might be an argument on willfulness. Yes, Your Honor. Give you a defense, maybe, on willfulness. Potentially. Potentially. In respect to the argument that voluntariness alone, without knowledge, is sufficient. The government relies on Minnesota v. Murphy, but the Murphy Court expressly found that the defendant had waived Fifth Amendment protections when, quote, he revealed incriminating information instead of timely asserting his Fifth Amendment privilege. Here, we timely asserted our Fifth Amendment privilege. The government has repeatedly relied on Shapiro's one-sentence statement that there's no Fifth Amendment violation when there's a sufficient relation between the activities thought to be regulated and the public. How did you assert that Fifth Amendment privilege? By letter to the prosecutor? I think it was by telephone call to the prosecutor. It was an oral assertion? It was an oral assertion, yes. By the lawyer rather than the individual? By the lawyer.  That's a funny way to assert it. And then it was asserted during the. I'll tell you the personal thing. The government always, prosecutors always had a problem figuring out how people should assert that. But they brought a motion to compel compliance and we responded. If they weren't going to show up, we sometimes let them out of showing up. If the lawyer sent a letter and the witness signed the letter as approving it, then we'd take that as a proper invocation. But you did it by telephone call. Yes. It was a loose proposition. And the government has never asserted that we didn't validly assert our Fifth Amendment, neither did the district court. That's a predicate to all this, us being in court today. If it were true that the mere fact that Congress can forbid an activity means that records may be required to be produced over the Fifth Amendment, there would have been no reason for all the courts who have tried to apply the required records doctrine where the government could have forbidden an activity. And courts have done so. In two subpoenas, Deuces Tecum, Roger v. McCasey, and Ray Underhill, the underlying activities could all have been forbidden. And yet the courts went into the Grosso test. So I would just ask that whereas here the act of producing documents would reveal the very status of the subpoenaed individuals as being part of a group the government seeks to prosecute, unlike the produce wholesaler in Shapiro, whose status was publicly apparent, and that act would be inherently self-incriminating, the required records doctrine should not apply, and the district courts should be averse. Thank you. Thank you very much, Ms. Rule. We'll come down to Greek Council and recess court until tomorrow morning at 930. This honorable court stands adjourned until tomorrow morning at 930. God save the United States and this honorable court.
judges: Robert B. King, Roger L. Gregory, G. Steven Agee